Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

1:20-cv-10935

Henry Moncure, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Class Action Complaint

7-Eleven, Inc.,

Defendant

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. 7-Eleven, Inc. ("defendant") markets, manufactures, labels, distributes, promotes and sells blueberry donut holes (similar to "Munchkins") in containers of 5 OZ under the 7-Select brand ("Product").

2. The Product prominently states "Blueberry" with a blue color pattern.




3. The representation as "Blueberry" is misleading because the Product contains a smaller amount of blueberries than consumers expect based on the label.

4. Consumers prefer foods which get their taste from a characterizing food ingredient, i.e., blueberries in blueberry donut holes, lemon in lemon biscotti, as opposed to added blueberry flavor from blueberries or natural blueberry flavor synthesized from cherries.[1]

---

[1] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

5. Real blueberries cost more than flavor extracted from blueberries, and consumers are willing to pay higher prices for the real thing.

6. Natural flavor derived from blueberries is "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from" blueberries, which is distinct from blueberry used as *an ingredient*. *See* 21 C.F.R. § 101.22(a)(3).

7. Even when blueberry flavor is extracted from blueberries, it undergoes harsh processing in a laboratory, as opposed to being used in their whole form after being picked from the field.

8. Consumers seek products with blueberries for reasons including their numerous health benefits – high in antioxidants, helping to reduce blood pressure and contributing to bone health.[2]

9. While it may appear inconsistent to be concerned about blueberries when consuming an indulgence like a donut snack, consumers justify the tradeoff because they think, "at least I'm getting some real blueberries."

10. Consumers rely on a food's principal display panel to quickly and accurately tell them the "common or usual name" of a food. 21 C.F.R. § 101.3(b)(2).

11. A food's name is required to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21

[2] Joe Leech, 10 Proven Health Benefits of Blueberries, Healthline.com, Oct. 9, 2018; Susan Seliger, 'Superfoods' Everyone Needs, WebMD; Megan Ware, RDN, L.D., Everything you need to know about blueberries, Medical News Today, Sept. 5, 2017.

C.F.R. § 102.5(a). 21 U.S.C. § 343(i).

12. This information includes the source of a food's flavor. 21 C.F.R. § 101.22(i).

13. "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[3]

14. The regulations for labeling a food's flavor tells consumers (1) if a food has flavor from the "real" thing, i.e., being smoked, (2) does the product contain added flavor *from* the named flavor, i.e., natural smoked flavor and (3) does the flavor come from artificial, synthetic sources. 21 C.F.R. § 101.22(i).

15. These flavor regulations have established custom and practice so that consumers' experience primed them to infer from a product's labeling whether a flavor was entirely from the characterizing ingredients or not.

16. Consumers are accustomed to products with front labels with qualifying terms such as "flavored," "other natural flavors," "naturally flavored" and "artificial flavors."

17. The absence of these terms causes consumers to infer the food has a sufficient amount of the characterizing ingredients to flavor the food. 21 C.F.R. § 101.22(i)(1).

18. The representation of the Product's flavor as "Blueberry," without qualification, gives consumers the impression that the flavor is only from the characterizing ingredient of blueberries and that the Product contains enough blueberries to sufficiently characterize the food. 21 C.F.R. § 101.22(i)(1).

[3] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

19. This representation is misleading because the Product's characterizing flavor is not exclusively from blueberries, as shown by the ingredient list.




INGREDIENTS: ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, WATER, PALM OIL AND FRACTIONATED PALM OIL, SOYBEAN OIL, CONTAINS LESS THAN 2 % OF EACH OF THE FOLLOWING: BLUEBERRY BITS (BLUEBERRIES, MALTODEXTRIN, CORN STARCH, SUGAR, SUNFLOWER LECITHIN, NATURAL FLAVOR), LEAVENING (BAKING SODA, MONOCALCIUM PHOSPHATE, SODIUM ACID PYROPHOSPHATE), EGG YOLKS, SALT, NATURAL AND ARTIFICIAL FLAVOR, WHEAT STARCH, WHEAT FLOUR, MONO- AND DIGLYCERIDES, DEFATTED SOY FLOUR, SOY LECITHIN, CANOLA OIL, CORN STARCH, VEGETABLE SHORTENING (PALM OIL, FRACTIONED PALM OIL, SOY LECITHIN), NONFAT MILK, CALCIUM CARBONATE, AGAR-AGAR, BLUE 1, RED 40, CITRIC ACID, TITANIUM DIOXIDE COLOR, DEXTROSE.

20. The Product does not only contain blueberries but contains "Blueberry Bits."

21. "Blueberry Bits" is composed mainly of blueberries, but also contains "Natural

Flavor."

22. This "natural flavor" contains added blueberry flavor, which makes the blueberry taste of the Product more pronounced.

23. Consumers will believe the Product's blueberry taste is due to having more blueberries when this is not true.

24. Moreover, added blueberry flavor does not provide the health and nutrition benefits that are provided by real blueberries.

25. Added blueberry flavor cannot replicate the flavor from real blueberries because it lacks the delicate balance of flavonoids critical to blueberries.

26. The Product's label is required to disclose the added blueberry flavor to consumers.

27. The addition of blueberry flavor to real blueberries means the label is required to state, "natural blueberry flavored" or "blueberry flavored." 21 C.F.R. § 101.22(i)(1)(i).

28. The added flavor is needed because the amount of blueberries in the Product is insufficient to independently provide a blueberry taste.

29. The added blueberry flavor allows the Product to use *less blueberries*, while in theory retaining a blueberry taste.

30. However, consumers value blueberries for more than their taste but for the benefits they can provide.

31. Snacks like blueberry donut holes that get a blueberry taste only from blueberries are not a rare or exotic delicacy that would cause a reasonable consumer "double check" the ingredient list to "disprove" the front label.

32. Further, a consumer at the checkout line would not be capable of identifying the "Natural Flavor" as contributing and resembling the blueberry flavor, which was done or could be

done by laboratory analysis of the flavor compounds.

33. The Product also contains BLUE 1, a blue food coloring, which gives consumers a misleading impression that the Product contains *more* blueberries than it does since the color is bluer than it otherwise would be.

34. The amount of blueberries in the Product is material to plaintiff and consumers.

35. Defendant knows consumers will pay more for the Product because the front label only states "Blueberry" instead of "natural blueberry flavored" or "does not have enough real blueberries."

36. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

37. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

38. The Product is sold for a price premium compared to other similar products, no less than $2.99 for 5 OZ, higher than it would otherwise be sold for absent the misleading representations.

Jurisdiction and Venue

39. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

40. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

41. Plaintiff Henry Moncure is a citizen of New York.

42. Defendant 7-Eleven, Inc. is a Texas corporation with a principal place of business in

Irving, Dallas County, Texas and is a citizen of Texas.

43. "Minimal diversity" exists because plaintiff Henry Moncure and defendant are citizens of different states.

44. Upon information and belief, sales of the Product exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

45. Venue is proper in this because a substantial part of the events or omissions giving rise to the claim occurred here.

46. Venue is further supported because many class members reside in this District.

Parties

47. Plaintiff Henry Moncure is a citizen of New York, New York County, New York.

48. Defendant 7-Eleven, Inc. is a Texas corporation with a principal place of business in Irving, Texas, Dallas County.

49. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within his district and/or State in reliance on the representations of the Product.

50. Plaintiff bought the Product on one or more occasions at one or more 7-Eleven stores, including the location at 368 8th Avenue New York NY 10001, between June and August 2020.

51. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and consumption and relied upon the representations.

52. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

53. The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

54. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so

with the assurance that Product's labeling is consistent with its composition.

Class Allegations

55. The class will consist of all purchasers of the Product who reside in New York and the other 49 states during the applicable statutes of limitations.

56. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

57. Common questions of law or fact predominate and include whether defendant’s representations were and are misleading and if plaintiff and class members are entitled to damages.

58. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

59. Plaintiff is an adequate representative because his interests do not conflict with other members.

60. No individual inquiry is necessary since the focus is only on defendant’s practices and the class is definable and ascertainable.

61. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members’ interests adequately and fairly.

63. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law (“GBL”) §§ 349 & 350
(Consumer Protection Statutes)

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Plaintiff and class members desired to purchase a product which had enough blueberries to flavor the product and did not require added blueberry flavor.

66. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

67. Defendant misrepresented the Product through its statements, omissions and actions.

68. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

69. Plaintiff incorporates by reference all preceding paragraphs.

70. Defendant misrepresented the Product by giving consumers the impression it contained more blueberries than it did.

71. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

72. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

73. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

74. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Defendant misrepresented the attributes and qualities of the Product.

77. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product as "natural blueberry flavored" when it knew doing so would mislead consumers.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated: December 26, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-10935
United States District Court
Southern District of New York

Henry Moncure, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

7-Eleven, Inc.,

Defendant

Class Action Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: December 26, 2020

/s/ Spencer Sheehan
Spencer Sheehan